## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HARINDER KAUR, *et al.*,

          Plaintiffs,

      v.

SEAN KELLENBERGER, *et al.*,

          Defendants.

Case No. 20-cv-1432-CKK-MJS

## REPORT AND RECOMMENDATION

One summer afternoon, Plaintiffs Harman Singh ("Singh") and Harinder Kaur ("Kaur") (together, "Plaintiffs") had a brush with the United States Park Police along the National Mall. Plaintiffs were bystanders to an encounter between a Park Police officer and two other individuals—an encounter that escalated quickly when one of the individuals exited a vehicle holding a knife. In those tense moments, Plaintiffs say they were "forced to the ground" and shoved by Park Police officers, and Singh was placed under arrest. Now, through their operative complaint, Plaintiffs seek monetary damages against two of the individual officers involved in the events of that afternoon—Lieutenant David Lamond and Officer Sean Kellenberger (together, "Defendants")—for their alleged violations of Plaintiffs' constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The case is before the Court on two motions (both encompassed within a single set of briefing): (1) a motion to dismiss by Lieutenant Lamond, arguing for dismissal because Plaintiffs did not timely serve him with the summons and complaint; and (2) a motion for summary judgment by Lieutenant Lamond and Officer Kellenberger, arguing that Plaintiffs' claims are not legally cognizable under *Bivens* and that, even if cognizable generally, Defendants are entitled to qualified immunity on the specific

claims and facts here. (ECF No. 42.) The motions are referred to the undersigned for a report and recommendation. Upon careful consideration of the relevant submissions and the governing authorities, the undersigned **RECOMMENDS** for the reasons explained below that the Court **DENY** the motion to dismiss but **GRANT** the motion for summary judgment.[1]

## FACTUAL BACKGROUND

On June 3, 2017, Lieutenant Lamond (then a ranked sergeant) was conducting parking enforcement around the National Mall when he came across a food truck without a visible license plate or VIN number. (ECF No. 42-2 ("Defs.' Stmt.") ¶¶ 1–2.)[2] As he began writing a parking ticket, two men approached and claimed ownership of the truck, so Lieutenant Lamond asked one of them to retrieve the registration. (*Id.* ¶¶ 3–4.) Meanwhile, a small and visibly unhappy crowd formed around Lieutenant Lamond. (*Id.* ¶¶ 5–6.) Knowing that certain vendors in the area had recently interfered with other officers engaged in food-truck enforcement activity, Lieutenant Lamond began to fear for his safety and requested backup. (*Id.* ¶ 7.) Soon after, the man reemerged from the truck. But rather than any registration document, he was holding a large kitchen knife.

---

[1] Because the issues are adequately presented by the parties' written submissions, the Court exercises its discretion to rule on the motions without a hearing. LCvR 7(f).

[2] Under our Local Rules, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Defendants filed a separate statement of facts comprising 29 numbered paragraphs. (*See* Defs.' Stmt.) Plaintiffs, in turn, filed a paragraph-by-paragraph response that admitted and denied "in part" most of Defendants' facts, but Plaintiffs' partial denials are premised on the notion that they "do not possess sufficient knowledge or information to affirm" the various facts. (*See* ECF No. 44-1 ("Pls.' Stmt.") ¶¶ 1–16, 20, 22, 24.) This sort of disclaimer does not suffice to properly controvert a fact for purposes of Rule 56. *See* Fed. R. Civ. P. 56(c)(1) (requiring parties to cite "to particular parts of materials in the record" to demonstrate a "genuine dispute"); Fed. R. Civ. P. 56(e)(2) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) ("[I]f one party presents relevant evidence that another party does not call into question factually, the court must accept the uncontroverted fact."). The Court therefore treats those facts as undisputed for present purposes, along with the other group of facts that Plaintiffs squarely admit. (*See* Pls.' Stmt. ¶¶ 17–19, 25–26.)

(*Id.* ¶ 8.) By that point, the crowd had backed Lieutenant Lamond up against the truck, and the man with the knife started moving toward him, so Lieutenant Lamond grabbed the man's arm and ordered him to drop the knife. (*Id.* ¶¶ 9–13.) Instead, the man handed off the knife to the other truck owner, who ran back into the truck with the knife and returned without it. (*Id.* ¶ 14.) As Lieutenant Lamond began placing both men under arrest, the crowd became increasingly agitated, so he radioed again for backup. (*Id.* ¶¶ 15–16.)[3]

Officer Kellenberger heard Lieutenant Lamond's call for backup and responded (together with another officer not named in the suit). (Defs.' Stmt. ¶¶ 19–20.) Within moments, Officer Kellenberger arrived. He pulled his marked U.S. Park Police vehicle off the street and onto a grassy area near the food truck, adjacent to the crowd. (*Id.* ¶¶ 21–22.) Singh and Kaur were part of that crowd; both testified to seeing about ten others gathered around. (*Id.* ¶ 18.)

Around the time of Officer Kellenberger's arrival on the scene, Park Police officers engaged Singh—and to some extent Kaur—and those interactions are what give rise to Plaintiffs' claims. But despite the centrality of those interactions, both sides inexplicably gloss over the relevant details in the separate statements of facts. As for Defendants, the handful of corresponding fact paragraphs simply recount that: Kellenberger observed Singh when he arrived (Defs.' Stmt. ¶ 23); Singh was "taken to the ground" (*id.* ¶ 25); Kaur was "pushed to the ground during the takedown" of Singh (*id.* ¶ 26); Kellenberger lifted Singh off the ground and escorted him to the back of the Park Police vehicle (*id.* ¶¶ 27–28); and Singh was arrested for resisting arrest (*id.* ¶ 29). Plaintiffs' contributions are no more helpful. Their paragraph-by-paragraph response to Defendants' statement does not offer any additional details, including as to the specific

---

[3] To quote Lieutenant Lamond's perspective, "I'm trying to deal with two individuals that both have a knife within very close proximity to me and a crowd of people that have surrounded me yelling at me as well, while I'm by myself." (*See* ECF No. 42-5, Lamond Dep. 112:18–113:3 (cited in Defs.' Stmt. ¶ 15).)

circumstances of the "takedown" or any physical contact from or with the officers. (*See* Pls.' Stmt. ¶¶ 23, 25–29.) And beyond responding to Defendants' proffered facts, Plaintiffs otherwise fail to set forth any additional material facts that they contend are in dispute, let alone in the form of a "concise statement of genuine issues" in keeping with the Court's Local Rules. *See* LCvR 7(h).

In essence, then, both sides leave the Court to root through the record, ascertain their respective versions of the key events at issue here, and then evaluate for itself whether a genuine dispute of material fact exists. The Court has no obligation to carry out that endeavor on its own and declines to do so. *See, e.g.*, *Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("[J]udges are not like pigs, hunting for truffles buried in briefs or in the record[.]"); *Jeffries v. Barr*, 965 F.3d 843, 860–61 (D.C. Cir. 2020) ("This Court is not in the habit of doing parties' lawyering for them, and we decline to take up that task now."); *Harris v. Noem*, 2025 WL 915701, at *1 n.4 (D.D.C. Mar. 26, 2025) ("[W]hen a party fails to properly support a fact at the summary judgment stage, the district court is under no obligation to sift through the record to find such support.").

But to round out the rest of the big-picture narrative, the Court summarizes the remaining events at a reasonably high level, based on the recitations in each side's briefing. (*See* ECF No. 42-1 ("Defs.' Mem.") at 29–32, 34; *see also* ECF No. 44 ("Pls.' Opp'n") at 3–4, 8–10.)[4]

Lieutenant Lamond, at some point while attempting to control the crowd, pushed Singh back twice. Then, after Officer Kellenberger (and another officer) arrived on the scene, he placed Singh under arrest at Lieutenant Lamond's direction, taking Singh to the ground in the process. Kaur went down, too, although the parties diverge on those details—Defendants suggest she fell because she was holding onto Singh (without any separate contact from the Park Police officers), whereas Kaur testified that one of the officers pushed her shoulders from behind and shoved her

---

[4] Page citations to the parties' briefing refer to the ones assigned by the Court's electronic filing system.

to the ground. In any case, the force of the fall caused Kaur to break her elbow. As to Singh, once he was handcuffed, Officer Kellenberger brought him back to his feet and placed him in the back of the Park Police vehicle.[5] These, at least, are the general facts, as best the Court can discern.

## PROCEDURAL HISTORY

Plaintiffs filed this action in May 2020, asserting claims against the United States, Officer Kellenberger, and another United States Park Police officer, Steven Ochocki. (ECF No. 1.) Plaintiffs amended their complaint as of right a few days later to modify some of their underlying allegations. (ECF No. 2.) In Counts I through III of their amended complaint, Plaintiffs alleged that Officers Kellenberger and Ochocki violated their Fourth Amendment rights by subjecting them to excessive force (Count I), unreasonable search and seizure (Count II), and false arrest (Count III). (*See id.* ¶¶ 50–64.) In Count IV of their amended complaint, Plaintiffs asserted a negligence claim against the United States under the Federal Tort Claims Act ("FTCA") predicated on the alleged misconduct of Officers Kellenberger and Ochocki. (*See id*. ¶¶ 64–70.)

The United States successfully moved to dismiss the FTCA negligence claim for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (*See* ECF No. 19, Mem. Op. and Order.) Judge Kollar-Kotelly held that claim deficient because Plaintiffs "predicate[d] their 'negligence' claim upon the same intentional conduct used to support their constitutional theory of liability under *Bivens*," meaning it was not "distinctly pled" to fall within a waiver of the United States' sovereign immunity under the FTCA. (*Id.* at 8.) Thereafter, following discovery, Plaintiffs filed an unopposed motion for leave to file a second amended complaint, mainly for the purpose of

---

[5] Park Police separately arrested the two men associated with the food truck (and the knife).

substituting Lieutenant Lamond as a named defendant in place of Officer Ochocki. (ECF No. 26.)[6] Judge Kollar-Kotelly granted leave to amend and ruled that the amendment should relate back to the filing of the original complaint, including because Lieutenant Lamond received adequate notice of the lawsuit during its early stages—through discussions with Officers Kellenberger and Ochocki, who reminded Lieutenant Lamond that he should be the defendant in the case given his involvement in the events of that day. (*See* ECF No. 27, Mem. Op. and Order at 6–7.)

Now, after the close of discovery, Defendants—limited at this point to Lieutenant Lamond and Officer Kellenberger—move for dispositive relief on Plaintiffs' remaining claims. Lieutenant Lamond seeks to dismiss the claims against him under Rule 12(b)(5) based on Plaintiffs' alleged failure to timely accomplish service of process. And Officer Kellenberger—joined by Lieutenant Lamond, seeking only alternative relief if his Rule 12(b)(5) defense does not prevail—moves for summary judgment under Rule 56. These motions are ripe for decision.

## DISCUSSION

### I.    <u>Lieutenant Lamond's Motion to Dismiss Based on Untimely Service</u>

Lieutenant Lamond initially seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(5) because Plaintiffs failed to timely serve him with the summons and operative complaint. On the specific facts here, however, the Court agrees with Plaintiffs that dismissal on this basis is unwarranted.

Start with some first principles. "Service of process," of course, "is fundamental to any procedural imposition on a named defendant." *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). The Federal Rules of Civil Procedure make plaintiffs "responsible for having the summons and

---

[6] Plaintiffs' original confusion reportedly stemmed from the fact that Officer Ochocki completed the police report for the incident—and "approved" it—on Lieutenant Lamond's behalf. (ECF No. 27 at 2–3.)

complaint served within the time allowed[.]" Fed. R. Civ. P. 4(c). And Plaintiffs "bear[] the burden of proving … proper service." *Jouannay v. Embassy of Fr.*, 220 F. Supp. 3d 34, 37 (D.D.C. 2016) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)). In turn, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see also* Fed. R. Civ. P. 12(b)(5) (allowing motion to dismiss based on "insufficient service of process").

That said, Rule 4(m) expressly provides for an exception to the default 90-day deadline for service, "if the plaintiff shows good cause for the failure," Fed. R. Civ. P. 4(m), which generally "exists when some outside factor, rather than inadvertence or negligence, prevented service." *Mann*, 681 F.3d at 374 (cleaned up). Moreover, even absent good cause, courts retain discretion to extend the time for service. *See id.* at 375. In exercising that discretion, there is "no hard list of considerable factors," *id.* at 376, but other judges in this District confronted with such circumstances have considered, among other points, whether extending time would cause "great prejudice" to the defendant, *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89–90 (D.D.C. 2004); *accord Bethel v. Rodriguez*, 2022 WL 971066, at *2 (D.D.C. Mar. 31, 2022).

Against this legal backdrop, the undersigned agrees that Plaintiffs failed to timely effect service on Lieutenant Lamond after the filing of the operative complaint, but the Court should exercise its discretion to excuse that delay for lack of any resulting prejudice.

To begin, there is no real dispute that Plaintiff failed to timely complete service. Plaintiffs essentially concede as much. Plaintiffs added Lieutenant Lamond as a defendant through the filing of their Second Amended Complaint in June 2021 (ECF No. 25), but they still had not served him more than a year later when Defendants filed these motion(s) in August 2022. This year-plus gap

easily exceeds the runway for timely service under the Rules. Since that time, Plaintiffs requested issuance of a summons as to Lieutenant Lamond (*see* ECF No. 45), and Plaintiffs report that his counsel then agreed to accept service (*see* Pls.' Opp'n at 16). Thus, while Plaintiffs did ultimately complete service in or around September 2022, that service was untimely under the Rules.

So the question becomes whether Plaintiffs' (objectively lengthy) delay should lead to dismissal. The Court believes it should not, albeit not for all the same reasons pressed by Plaintiffs.

The Court first disagrees with Plaintiffs that Lieutenant Lamond waived service. Their main argument on this front is that because Lieutenant Lamond "addressed the merits" of Plaintiffs' claims in his latest motion(s), he stepped into the litigation voluntarily, proper service or not. Plaintiffs go so far as to argue that "*any* motion" filed by a defendant, including one "raising allegations of insufficient service of process," would operate as a waiver of service. (Pls.' Opp'n at 11.) These arguments fail. First, a defendant surely does not waive a valid Rule 12(b)(5) defense merely by filing a motion challenging service of process. If the law were otherwise, then simply to raise the defense would be to waive the defense. *See Candido v. Dist. of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) ("[I]f a defendant's mere appearance waived its Rule 12(b)(5) defense, it effectively could never contest the sufficiency of the service of process upon it.") (citation omitted). The undersigned sees no reason to treat that analysis differently just because Lieutenant Lamond's motion to dismiss seeks *alternative* relief on the merits. *See, e.g.*, *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 227 (D.D.C. 2014) (rejecting similar contention as to alternative motion to dismiss on Rule 12(b)(6) grounds); *Toms v. Hantman*, 530 F. Supp. 2d 188, 190–91 (D.D.C. 2008) (granting Rule 12(b)(5) motion for insufficient process despite defendant simultaneously moving for alternative merits-based relief, including summary judgment under Rule 56). The fact remains that Lieutenant Lamond invoked his Rule 12(b)(5) defense front and

center, but, presumably for reasons of judicial economy and efficiency, he joined Officer Kellenberger's merits-based arguments for summary judgment *in the alternative*. *See* Fed. R. Civ. P. 1 (requiring "the court and the parties" to aim for "the just, speedy, and inexpensive determination of every action and proceeding"). This approach does not amount to a waiver.

Waiver issues aside, the Court nevertheless believes that Plaintiffs' failure to timely serve Lieutenant Lamond should be excused based on the absence of any "great prejudice" to him that would follow from such an outcome. *Wilson*, 332 F. Supp. 2d at 89–90; *Bethel*, 2022 WL 971066, at *2. This is true for several reasons. First, Lieutenant Lamond has long known about this lawsuit and his expected role as a defendant, as the Court explained when granting Plaintiffs' motion for leave to file the Second Amended Complaint adding him as a party. (ECF No. 27 at 7 (noting that other officers "spoke with Lt. Lamond shortly after being served," including about the fact that he "should be the defendant in the case").) Second, Lieutenant Lamond participated in the discovery process in the case, including by testifying in a deposition in May 2021. The Court understands, as Lieutenant Lamond points out, that he was technically deposed as a non-party before being added as a named defendant, but he provided relevant testimony all the same. Moreover, while Lieutenant Lamond did not separately propound or respond to written discovery, his same counsel did so on behalf of Officer Kellenberger (and former defendant, Officer Ochocki), and his same counsel likewise deposed Plaintiffs and other relevant witnesses. Given all that, Lieutenant Lamond was reasonably positioned to—and did—seek merits-based relief at the summary judgment stage. Finally, as noted above, Plaintiffs have since completed service, a step they took several years ago now, promptly in the wake of the Rule 12(b)(5) arguments surfacing.

In the Court's view, these factors—certainly in combination—counsel in favor of excusing Plaintiffs' untimely service and considering the claims against both Lieutenant Lamond and Officer Kellenberger on the merits. The Court turns to those merits-related issues next.

## II.    Defendants' Motion for Summary Judgment

### A.    Governing Legal Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact exists if the evidence, viewed in a light most favorable to the nonmoving party, could support a reasonable jury's verdict for the nonmoving party." *Figueroa v. Pompeo*, 923 F.3d 1078, 1085 (D.C. Cir. 2019) (citation and quotation marks omitted). In carrying out this analysis, the Court does not "weigh the evidence and determine the truth of the matter" but instead determines only "whether there is a genuine issue for trial." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (citation and quotation marks omitted). "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). "In response, the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id*.

### B.    Plaintiffs' Claims Are Not Legally Cognizable Under *Bivens* and Its Progeny

Plaintiffs pursue so-called *Bivens* claims against Lieutenant Lamond and Officer Kellenberger, seeking damages for alleged Fourth Amendment constitutional violations.

More than fifty years ago, the Supreme Court in *Bivens* held "that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez*

*v. Mesa*, 589 U.S. 93, 99 (2020) (citing *Bivens*, 403 U.S. 388). In the ensuing decade, the Court recognized two other causes of action in this space: a Fifth Amendment claim for alleged sex discrimination by a congressman, *see Davis v. Passman*, 442 U.S. 228, 231 (1979), and an Eighth Amendment claim based on a federal prisoner's alleged inadequate care, *see Carlson v. Green*, 446 U.S. 14, 17–18 (1980). "In the forty years following those three decisions, however, the Supreme Court has not recognized a new *Bivens* claim." *Buchanan v. Barr*, 71 F.4th 1003, 1007 (D.C. Cir. 2023) (citing *Egbert v. Boule*, 596 U.S. 482, 486 (2022)). "While *Bivens* and its progeny have not been overruled and claims for damages arising under the Constitution remain available in some circumstances, the Supreme Court has recognized that creating implied causes of action under *Bivens* is 'a disfavored judicial activity.'" *Id.* (quoting *Egbert*, 596 U.S. at 492).

Under Supreme Court precedent, the potential availability of a *Bivens* remedy hinges on the application of a two-part test. At the first step of the test, courts must ask "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (internal citation and quotation marks omitted). "If the context is not new, the claim can go forward." *Buchanan*, 71 F.4th at 1007. But if the context is new, courts must consider at the second step whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017)). The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez,* 589 U.S. at 102).

Applying these governing principles here, Plaintiffs' claims fail because they arise in a "new" *Bivens* context and because "special factors" counsel against allowing them to proceed.

### 1. Plaintiffs' Claims Present A New *Bivens* Context

The Court first asks whether Plaintiffs' claims arise in a new context. Under controlling precedent, "[w]hat constitutes a 'new context' is exceedingly broad." *Buchanan*, 71 F.4th at 1008. "If the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court, then the context is new." *Id.* (quoting *Ziglar*, 582 U.S. at 139) (cleaned up). When evaluating the existence of any potentially "meaningful" differences, courts look to a variety of non-exclusive factors, including "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; ... the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]" *Ziglar*, 582 U.S. at 139–40; *see also Patel v. Liu*, 2024 WL 4286110, at *1–3 (D.D.C. Sept. 25, 2024) (outlining same illustrative factors). In this case, there are at least several "meaningful" differences between Plaintiffs' claims and those in the Supreme Court's past *Bivens* precedents. *Buchanan*, 71 F.4th at 1012 ("The 'new context' inquiry considers only prior Supreme Court—not lower court—precedent.") (Wilkins, J., concurring).

Most significantly, the overall factual context here differs markedly from those few cases in which the Supreme Court previously greenlit an implied cause of action under *Bivens*. The closest analogue is *Bivens* itself, which likewise involved claims of Fourth Amendment violations for unlawful arrest and excessive force. *See Bivens*, 403 U.S. at 389. Indeed, Plaintiffs insist this case fits neatly within the contours of *Bivens*—what they call "a straightforward and well-established *Bivens* claim." (Pls.' Opp'n at 25.) As the Supreme Court has made clear, though, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103; *Zigler*, 582 U.S. at 139 (stressing that even if "the right and the mechanism of injury [are] the

same," the relevant "context" is what matters for purposes of the *Bivens* analysis). So the mere Fourth Amendment overlap is not enough. And beyond the surface-level theories—*i.e.*, that Plaintiffs claim unlawful arrest and excessive force in contravention of the Fourth Amendment, as in *Bivens*—the incident underlying Plaintiffs' claims differs meaningfully from *Bivens*. *See Egbert*, 596 U.S. at 495 ("While *Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury … these superficial similarities are not enough to support the judicial creation of a cause of action.").

In *Bivens*, a group of federal narcotics officers entered the plaintiff's home, at which point they "manacled" him "in front of his wife and children," "threatened to arrest the entire family," and then "searched the apartment from stern to stern." *Bivens*, 403 U.S. at 389. In that context, *Bivens* characterized the core underlying rights at issue as "primarily rights of privacy," which are essentially near their zenith within one's home. *Id.* at 390; *see also Robinson v. Pilgram*, 2021 WL 5987016, at *12 (D.D.C. Dec. 17, 2021) ("[T]he claim in *Bivens* centered around an alleged violation of privacy rights through a warrantless home invasion[.]"), *aff'd*, 2022 WL 3009621 (D.C. Cir. July 28, 2022); *Lovett v. United States*, 2024 WL 4286054, at *4–5 (D.D.C. Sept. 25, 2024) ("[T]he Fourth Amendment specially privileges the home."). Here, by contrast, Plaintiffs' interactions with Park Police officers, including Singh's arrest, occurred in a public setting on the National Mall, after Plaintiffs chose to join a group of bystanders surrounding—and seemingly antagonizing—an officer engaged in parking enforcement activity.[7] In other words, federal law enforcement officers did not invade Plaintiffs' private space, but rather Plaintiffs affirmatively injected themselves into law enforcement activity occurring in public. Unlike in *Bivens*, then,

---

[7] Per Plaintiff's brief, "Mr. Singh ended up joining the crowd" surrounding the altercation and "voiced his frustration with the USPP," and "[a]t some point, Ms. Kaur joined." (Pls.' Opp'n at 3–4.)

Plaintiffs claims do not implicate the same core privacy rights because their alleged "harm stems from an arrest outside the home." *Robinson*, 2021 WL 5987016, at *12 (citing *Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019)); *see also Lovett*, 2024 WL 4286054, at *4–5 (similarly distinguishing *Bivens*, which involved "a breach of the plaintiff's home," because the plaintiff was "outside his apartment when the officers confronted him, in a parking lot").

Plaintiffs say it would be "absurd" to "draw a strict line at the doorframe of any private home" in recognizing potential *Bivens* claims in the Fourth Amendment context. (Pls.' Opp'n at 25.) But the Court need not draw such a categorical "line" here, although at least a few other circuits (outside the D.C. Circuit) have done so.[8] Even assuming a future Fourth Amendment case outside the private-home context might not present a new context for *Bivens* purposes, this case is distinct from *Bivens* beyond the mere fact that the underlying incident occurred in a public setting. As recounted above, and as undisputed by Plaintiffs (Defs.' Stmt. ¶¶ 5–13; Pls.' Stmt. ¶¶ 5–13), the events here took place amid a dynamic situation requiring law enforcement officers to gain control of a volatile scene that risked the physical safety of others—including Lieutenant Lamond, who was cornered against a food truck while a man he was preparing to penalize had been approaching him with a large knife. (Defs.' Stmt. ¶¶ 5–13.) And until Officer Kellenberger's vehicle arrived on the scene, Lieutenant Lamond was considerably outnumbered by a sizeable and vocally unhappy crowd. These other precarious dynamics, especially when coupled with the reality that they unfolded in public, suffice to distinguish this case from *Bivens*.

Defendants separately contend that this case presents a "new context" merely by virtue of the "new" category of defendants involved here versus past Supreme Court cases—namely, U.S.

---

[8] *See, e.g.*, *Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (distinguishing *Bivens* because the underlying incident "occurred on public lands … a place where [plaintiff] had no expectation of privacy," as compared with "the unreasonable government intrusion in [the plaintiff's] home" in *Bivens*); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) ("This case arose in a parking lot, not a private home as was the case in *Bivens*.").

Park Police officers, as compared with federal narcotics agents (*Bivens*), a congressman (*Davis*), or federal prison officials (*Carlson*). This is certainly another distinction, but Defendants place too much weight on it here. They cite *Egbert* for the proposition that "the Supreme Court said that the Ninth Circuit properly 'conceded' that the claims there arose in a new context simply because Agent Egbert was a DHS-CBP agent." (Defs.' Mem. at 17.) But that is neither what the Ninth Circuit nor the Supreme Court said on that issue. For its part, the Ninth Circuit took the opposite view from what Defendants suggest: "The fact that [the officer] is a border patrol agent, standing alone, does not preclude a *Bivens* action." *Boule v. Egbert*, 998 F.3d 370, 388 (9th Cir. 2021). And while the Supreme Court did recount that the "Court of Appeals conceded that [the] Fourth Amendment claim presented a new context for *Bivens* purposes," 596 U.S. at 494, its discussion on that point did not mention the different law enforcement agencies or anything of the sort.

Beyond that, Defendants do not cite any other cases for the proposition that *Bivens* claims involving U.S. Park Police officers necessarily arise in a "new context" on that basis alone. Plaintiffs, on the other hand, point to a few decisions within the Fourth Circuit that have allowed potential *Bivens* claims against Park Police officers. (Pls.' Opp'n at 20.) So the caselaw presented to the Court does not help Defendants on this point. It's also hard to ignore that our Court of Appeals recently passed on an opportunity to announce the sort of bright-line, Park Police distinction that Defendants advocate. In *Buchanan*, the plaintiffs challenged the Park Police's efforts to "clear[] protestors from Lafayette Park in June 2020" on various constitutional grounds. 71 F.4th at 1005. In declining to extend *Bivens* to those claims, the Circuit found a "new context because the clearing of protestors from a public park by federal law enforcement officers is notably different from an unlawful search and arrest by federal narcotics officers." *Id.* at 1008. The Circuit surely could have added that the specific category of "federal" officers (federal Park Police officers

there, versus federal narcotics agents in *Bivens*) was likewise a basis to find a "new context," but it did not. Instead, the Circuit focused on the divergent underlying factual circumstances of the challenged events, as this Court does above. Given that, and especially considering the recency of *Buchanan*, the undersigned does not think it appropriate to endorse a categorical view that any case against Park Police officers necessarily presents a "new context" for that reason alone.

But at a minimum, the distinction can, at least in certain cases, amplify how and why the broader context is "new" and different from the Supreme Court's prior *Bivens* cases. After all, different "federal agencies have different duties, jurisdictions, and authorities that could alter the relevant legal analysis." *Lovett*, 2024 WL 4286054, at *5-6 (articulating distinctions between DEA agents and Secret Service officers). The Drug Enforcement Administration, for instance, "enforces controlled substances laws and cracks down on drug traffickers nationwide" in both public and private settings, *see id.*, whereas the U.S. Park Police is responsible for day-to-day law enforcement within public spaces (*i.e.*, our national parks). Because the underlying events here arose in connection with the routine, public-facing law enforcement activities of the U.S. Park Police—here, parking enforcement along the National Mall—the nature of the specific federal officials carrying out those activities drives home the distinct context here as compared to *Bivens*. This is not to say that in a future case, a plaintiff should be definitively barred from pursuing *Bivens* claims against Park Police officers acting in a different scenario and a different factual context merely because the defendants are Park Police officers. But at least on the facts of this case, the overall circumstances present a "new context" for *Bivens* purposes, when considered as a whole.

### 2. "Special Factors" Counsel Against Extending *Bivens* Here

Because Plaintiffs' claims present a "new *Bivens* context," the Court next asks whether any "special factors" militate against extending *Bivens* here. *Ziglar*, 582 U.S. at 136. Importantly, "[i]f

there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Buchanan*, 71 F.4th at 1010 (quoting *Egbert*, 596 U.S. at 491).

In *Egbert*, the Supreme Court explained that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure.'" 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* (quoting *Ziglar*, 582 U.S. at 137). And that is true whether the existing remedies would provide complete relief or not—"the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (citations and quotations marks omitted). For these reasons, *Egbert* held that the Border Patrol's internal grievance procedures precluded the Court from "superimposing a *Bivens* remedy." *Id.* at 497–98.[9]

As Defendants rightly argue, that same analysis maps neatly onto this case. The same sort of internal grievance procedure is available here. Defendants point out that "[t]hose aggrieved by U.S. Park Police officials['] conduct may file a grievance." (Defs.' Mem. at 22 (citing File a Complaint, https://www.nps.gov/subjects/uspp/file-a-complaint.htm).)[10] Plaintiffs largely ignore this point in their Opposition, except to rejoin that "grievance procedures … do not redress [their] injuries." (Pls.' Opp'n at 29.) But as noted, the analysis does not turn on whether the alternative

---

[9] As the Court explained, the agency was "statutorily obligated to 'control, direc[t], and supervis[e] ... all employees," *Egbert*, 596 U.S. at 497 (quoting 8 U.S.C. § 1103(a)(2)), and "by regulation … must investigate '[a]lleged violations of the standards for enforcement activities" and accept grievances from "[a]ny persons wishing to lodge a complaint," *id.* (quoting 8 C.F.R. §§ 287.10(a)–(b)).

[10] The website provides as follows: "The United States Park Police Internal Affairs Unit documents and investigates allegations of misconduct against Department personnel that are received both through internal (administrative) and external (citizen generated) means." It goes on to explain that a "supervisor assigned to the case will conduct a thorough investigation, to include an interview of the involved employee and any witnesses that have been identified." *See* https://www.nps.gov/subjects/uspp/file-a-complaint.htm

process would provide complete relief or "redress," but whether they exist. *See Egbert*, 596 U.S. at 497–98; *see also Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 921 (D.C. Cir. 2018) ("It also makes no difference if the [alternative] remedies would not provide a full remedy …. The question is whether alternative remedies exist, not whether they cover the full breadth of harm that a would-be *Bivens* plaintiff alleges."). Thus, as another federal court recently put it, "the existence of the Park Police's complaint procedures *alone* forecloses" the viability of Plaintiffs' *Bivens* claims. *Gray v. Gomez*, 728 F. Supp. 3d 264, 273 (E.D.N.Y. 2024).[11]

*    *    *

Because Plaintiffs' *Bivens* claim arises in a new context and because "special factors" counsel against allowing the creation of a judicial remedy for them, controlling Supreme Court precedent dictates that the Court should grant summary judgment for Defendants on this basis.

### III.  The Court Declines To Address Defendants' Qualified Immunity Arguments

Defendants alternatively seek summary judgment on a qualified-immunity theory, should the Court "decides to extend *Bivens* to this case." (Defs.' Mem. at 28.) Because the Court concludes that *Bivens* does not extend here, there is no need to reach Defendants' alternative arguments.

But even if the Court were inclined to wade into the alternative qualified-immunity issues, the parties' approach to the briefing in this case—specifically, their halfhearted compliance with LCvR 7(h)—would render that effort exceedingly difficult. Plaintiffs' claims hinge in large part of claims of excessive force, "an area of the law in which the result very much depends on the facts of each case[.]" *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam). Yet, as the Court already outlined above, Defendants' separate statement of material facts elides most of the key

---

[11] Given the straightforwardness of this analysis, the Court need not address Defendants' other "special factors" theories. *Buchanan*, 71 F.4th at 1010 ("Because the presence of one special factor is sufficient to preclude the availability of a *Bivens* remedy, we do not reach Appellees' other … arguments[.]").

factual details surrounding Plaintiffs' interactions with Defendants. Defendants certainly neglected to present those key factual details in the light most favorable to Plaintiffs, as Rule 56 requires. (*See* Defs.' Stmt. ¶¶ 23, 25–29.) One notable example relates to how Kaur hit the ground and broke her elbow. Defendants assert that Kaur was simply "holding Singh when he went to the ground and injured her right elbow." (Defs.' Mem. at 29–30.) But Kaur testified that an officer pushed her to the ground using two hands on her shoulders from behind. (ECF No. 42-7, Kaur Dep. at 33-34.) This is a genuine dispute, and it sure strikes the Court as a material one. Other examples remain.

Plaintiffs did not help matters. The Court's Local Rules required that they file a "separate concise statement of genuine issues," to include all additional "material facts" that they contend demonstrate a "genuine issue necessary to be litigated." LCvR 7(h). They did not do so. And even though their response to the Defendants' separate statement of facts contextualized some of the relevant interactions with additional facts and evidence, Plaintiffs still left a fair bit on the cutting-room floor—the above point regarding Kaur's fall being just one example.

Simply put, the Court is not positioned to resolve Defendants' qualified immunity arguments on the summary-judgment record the parties presented, at least not without sifting through the entirety of the record itself. Given that, and especially when coupled with the Court's threshold determination that a *Bivens* remedy should not even be available on these claims, the Court declines to reach Defendants' alternative arguments for qualified immunity.

## RECOMMENDATION

To sum up, for the reasons explained, the Court **RECOMMENDS** that the Court **DENY**

Lieutenant Lamond's motion to dismiss but **GRANT** Defendants' motion for summary judgment.


Dated: June 13, 2025

_____
MATTHEW J. SHARBAUGH
United States Magistrate Judge

*    *    *

The Court hereby advises that, pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(b), any party who objects to a report and recommendation must file a written objection within fourteen (14) days of the party's receipt of the report and recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).