UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARINDER KAUR and HARMAN SINGH,

    Plaintiffs,

v.

SEAN KELLENBERGER, *et al.*,

    Defendants.

Civil Action No. 20-1432 (CKK)

**MEMORANDUM OPINION**
(March 2, 2026)

In this action, Plaintiffs Harinder Kaur and Harman Singh seek damages from two United States Park Police officers arising from a physical confrontation during which the officers arrested Mr. Singh. The Defendants, Officer Sean Kellenberger and Lieutenant David John Lamond, moved for summary judgment and, as to Defendant Lamond, for dismissal for lack of proper service. This Court referred the Defendants' motion to a Magistrate Judge for a report and recommendation. Magistrate Judge Matthew J. Sharbaugh now recommends denying Defendant Lamond's motion to dismiss but granting both Defendants' motion for summary judgment. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **DENY** the Defendants' motion to dismiss as to Defendant Lamond and **GRANT** the Defendants' motion for summary judgment.

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- the Defendants' Motion to Dismiss and for Summary Judgment ("Defs.' Mot."), Dkt. No. 42;
- the Plaintiffs' Memorandum in Opposition to the Defendants' Motion ("Pls.' Opp'n"), Dkt. No. 44;
- the Defendants' Reply in Support of their Motion ("Defs.' Reply"), Dkt. No. 46;
- the Report and Recommendation filed by Magistrate Judge Matthew J. Sharbaugh ("R. & R."), Dkt. No. 53;
- the Plaintiffs' Objections to the Report and Recommendation ("Pls.' Objs."), Dkt. No. 54;
- the Defendants' Response to the Plaintiffs' Objections ("Defs.' Resp."), Dkt. No. 57; and
- the Plaintiffs' Reply to the Defendants' Response ("Pls.' Reply"), Dkt. No. 58.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

1

## I. BACKGROUND

This case arises from a parking enforcement operation on the National Mall.[2] Before the events at issue, U.S. Park Police Lieutenant David Lamond identified a parked food truck without a visible license plate or vehicle identification number, and he began writing a ticket for the vehicle.[3] Lt. Lamond was working alone at the time. As he was writing the ticket, two men approached and told him that the truck belonged to them. The officer asked one of these men to produce the truck's registration, and he went inside the truck to retrieve it.

A small crowd then began to form around Lt. Lamond. Lt. Lamond later testified that the gathering crowd caused him to fear for his safety, in part because of prior incidents in which vendors had impeded parking enforcement officers taking action against food trucks. He therefore called for backup from other Park Police in the area. The press of the crowd eventually led Lt. Lamond to move closer to the side of the truck, near its entrance.

The man who had gone into the truck to retrieve the registration then reemerged from the truck's entrance, carrying a knife. As the man began to walk toward Lt. Lamond, the officer grabbed him by the arm and ordered him to drop the knife. The man handed the knife to the other owner of the truck, who put it back inside the truck and came back outside. Lt. Lamond then called for backup a second time, noting that one of the people on the scene had a knife. He then began attempting to arrest the two truck owners.

---

[2] The following discussion is based on unrebutted statements of fact presented in the Defendants' Statement of Undisputed Material Facts ("Defs.' Stmt."), Dkt. No. 42-2. The Plaintiffs deny many of these statements "in part," stating they "do not possess sufficient knowledge or information" to affirm or rebut them. *See* Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Dkt. No. 44-1, ¶¶ 1–16, 20, 22, 24. As Magistrate Judge Sharbaugh correctly concluded, this response is insufficient to demonstrate a genuine dispute of material fact on a motion for summary judgment. *See* R. & R. at 2 n.2; LCvR 7(h)(1) (providing that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion"); Fed. R. Civ. P. 56(c)(1) (providing that parties must cite "particular parts of materials in the record" to demonstrate a "genuine dispute" of fact). In the absence of citations to contrary factual material in the record, the Court must accept the Defendants' relevant statements as undisputed.

[3] At the relevant time, Defendant Lamond held the rank of sergeant. *See* Defs.' Stmt. ¶ 1.

Officer Sean Kellenberger heard Lt. Lamond's call for backup and came with another officer to the scene in his Park Police vehicle, pulling up over a crosswalk and onto a pedestrian walkway alongside the food truck. As Officer Kellenberger pulled up, Lt. Lamond was in the process of arresting the two truck owners, and a crowd was gathered around him.

Meanwhile, Harinder Kaur and her son, Harman Singh, were observing the arrests from the walkway alongside the food truck. Earlier that day, Mr. Singh had approached Lt. Lamond to ask him about the status of the Park Police's investigation into a report that Mr. Singh had filed about a previous incident in which multiple people allegedly assaulted Mr. Singh. *See* Pls.' Objs., Dkt. No. 54, at 6–7 (citing Tr. of Dep. of David Lamond, Dkt. No. 44-4).

The exact details of what happened once Officer Kellenberger arrived on the scene are in dispute. According to the Plaintiffs, as Officer Kellenberger pulled up, Mr. Singh put up his hand to signal to the officer to slow down and to protect himself from the oncoming vehicle. *See* Compl. ¶ 38. Officer Kellenberger later testified that he perceived that Mr. Singh was standing in the way of his vehicle and that Mr. Sigh "banged on the hood" of the vehicle as it approached. *See* Tr. of Dep. of Sean Kellenberger, Dkt. No. 42-6, at 27:1–4.

The Plaintiffs allege that immediately after Officer Kellenberger exited his vehicle, he tackled Mr. Singh, bruising his chest, and pushed Mrs. Kaur to the ground, causing a fracture to her right elbow and permanent injury to her right arm. *See* Compl. ¶¶ 42–43. The Plaintiffs further allege that Officer Kellenberger held Mr. Singh face-down on the ground with a knee on his back. *See* Pls.' Objs. at 9 (citing Tr. of Dep. of Harman Singh, Dkt. No. 44-8).

According to the Defendants, Officer Kellenberger perceived Mr. Singh to be interfering with his ability to help Lt. Lamond arrest the two men who identified themselves as owners of the food truck. *See* Defs.' Mem. at 26–27. Lt. Lamond later testified that, while making these

3

arrests, he had commanded Mr. Singh to back up multiple times; after he refused to do so, Lt. Lamond pushed him back twice. Tr. of Dep. of David Lamond, Dkt. No. 42-5, at 130:19–21, 134:1. According to the Defendants, Officer Kellenberger pulled Mr. Singh to the ground to overcome what he perceived to be Mr. Singh's interference with the arrests that Lt. Lamond was making.[4] *See* Defs.' Mem. at 26–27. The Defendants contend that any contact with Mrs. Kaur was merely incidental to the takedown of Mr. Singh. *Id.* at 26, 28.

It is undisputed that officers on scene eventually arrested Mr. Singh, pulled him to his feet, escorted him to the back of a Park Police vehicle, and held him for resisting arrest. Mr. Singh ultimately was not charged with any crime and was released from custody.

Plaintiffs Kaur and Singh later filed this civil action, asserting four counts: three Fourth Amendment claims against individual Park Police officers seeking damages under the rule of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and a negligence claim against the United States seeking damages under the Federal Tort Claims Act ("FTCA"). This Court granted the Defendants' motion to dismiss the FTCA claim, concluding that the Plaintiffs had failed to establish that their claim fell within the scope of the FTCA's waiver of sovereign immunity. Mem. Op. & Order, Dkt. No. 19. The Court later granted the Plaintiffs leave to amend their complaint to substitute Lt. Lamond as a party in place of another officer who the Plaintiffs had reasonably but mistakenly believed was involved in the incident at issue when they filed their original complaint. *See* Mem. Op. & Order, Dkt. No. 27.

---

[4] After noting that the parties' descriptions of these events were not particularly clear and left the Court to "root through the record" for the relevant details, Magistrate Judge Sharbaugh summarized these events by stating that Officer Kellenberger "placed [Mr.] Singh under arrest at [Lt.] Lamond's direction, taking [Mr.] Singh to the ground in the process." R. & R. at 4. However, as the Plaintiffs note in their Objections, it does not appear from the record that Lt. Lamond directed that Mr. Singh be arrested before Officer Kellenberger brought him to the ground.

4

After the parties completed discovery, the Defendants filed the pending motion seeking summary judgment and, as to Defendant Lamond, seeking dismissal for lack of proper service. *See* Defs.' Mot., Dkt No. 42; *see also* Pls.' Opp'n, Dkt. No. 44; Defs.' Reply, Dkt. No. 46.

After this motion became ripe, the Court referred the matter to a Magistrate Judge for a report and recommendation. Order, Dkt. No. 47. Magistrate Judge Matthew J. Sharbaugh ultimately recommended that the Court deny the Defendants' motion to dismiss the claims against Defendant Lamond but grant summary judgment in both Defendants' favor on the ground that a *Bivens* remedy is not available. *See* R. & R., Dkt. No. 53. The Plaintiffs filed objections to Magistrate Judge Sharbaugh's report and recommendation, to which the Defendants responded. *See* Pls.' Objs., Dkt. No. 54; Defs.' Resp., Dkt. No. 57; *see also* Pls.' Reply, Dkt. No. 58.

This matter is now ripe for resolution.

## II. LEGAL STANDARD

When a party files a timely objection to a magistrate judge's report and recommendation, the district court reviews the magistrate judge's determination *de novo*. Fed. R. Civ. P. 72(b)(3); LCvR 73.d(d).

A party that is not served with a summons within the proper time may move to dismiss the action for lack of proper service. Fed. R. Civ. P. 12(b)(5); *see also* Fed. R. Civ. P. 4(m). Courts generally grant such motions only upon a showing of actual prejudice from the failure of service; otherwise, the prevailing practice is to allow an opportunity to correct the defect, including by extending the time for service if there is good cause to do so. *See* 5B Wright & Miller's Federal Practice & Procedure § 1353 (4th ed. 2025) (collecting cases).

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact is an issue that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). However, to withstand a motion for summary judgment, a nonmoving party must identify specific material in the record showing that there is a "genuine issue" for trial. *Celotex*, 477 U.S. at 324. Conclusory assertions offered without any factual basis in the record are not sufficient. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

### III. ANALYSIS

#### A.     The Plaintiffs' delay in serving Defendant Lamond is excused.

The first issue presented in the parties' motions is whether Defendant Lamond should be dismissed from this case under Federal Rule of Civil Procedure 12(b)(5) for failure to effect timely service. It is undisputed that the Plaintiffs did not timely serve Defendant Lamond after adding him to the case in their Second Amended Complaint. *See* Fed. R. Civ. P. 4(m). The only dispute is whether the Court should excuse this failure of service, either because Defendant Lamond waived service or because the lack of timely service caused him no prejudice.

This Court agrees with Magistrate Judge Sharbaugh that Defendant Lamond did not waive service, but that there is nonetheless good cause to excuse the Plaintiffs' delay in serving him under the circumstances presented here. *See* R. & R. at 9–10. There is no dispute that

6

Defendant Lamond had actual notice of this suit long before he was served. Among other things, he gave testimony as a non-party deponent before he was added as a Defendant. Furthermore, all Defendants in this case, including Defendant Lamond, have been represented by the same counsel, and there is no dispute that counsel received timely notice of the Second Amended Complaint that added Defendant Lamond to the case. Counsel was therefore able to pursue relevant discovery and seek appropriate relief—including the pending motion for summary judgment—on Defendant Lamond's behalf, unimpeded by the failure of service. Finally, after the Defendants filed their motion to dismiss for lack of proper service, the Plaintiffs eventually did serve Defendant Lamond.

Under these circumstances, there is no risk of unfair prejudice to Defendant Lamond from allowing this case to proceed against him, and there is good cause to "extend the time for service for an appropriate period," to include the date on which the Plaintiffs actually accomplished service. *See* Fed. R. Civ. P. 4(m).

Accordingly, the Plaintiffs' delay in serving Defendant Lamond is excused, and the Court shall **DENY** the Defendants' motion to dismiss for lack of service under Rule 12(b)(5).

    **B.**    **Binding precedent forecloses the availability of a *Bivens* remedy in this case.**

The Plaintiffs' remaining claims in this case rely on the existence of an implied cause of action for damages under *Bivens*. But as Magistrate Judge Sharbaugh correctly concluded, such claims face formidable hurdles. Although the Supreme Court has not "dispense[d] with *Bivens* altogether," it has warned lower courts that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017)).

Under the modern framework, when a court evaluates a proposed *Bivens* claim, it must apply a two-part test. *See Egbert*, 596 U.S. at 492. First, it must determine whether the case

7

presents "a new *Bivens* context." *Id.* (quoting *Ziglar*, 582 U.S. at 122). If so, the court proceeds to the second step, at which it must ask "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 122). The Supreme Court has directed that "even a single 'reason to pause before applying *Bivens* in a new context'" precludes a lower court from recognizing a *Bivens* remedy. *Id.* (quoting *Hernández v. Mesa*, 589 U.S. 93, 102 (2020)).

The concept of a "new context" is "exceedingly broad." *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). All that is required is that a case be "different in a meaningful way" from one of the small set of cases—just three—in which the Supreme Court has recognized a *Bivens* remedy. *See id.* (quoting *Ziglar*, 582 U.S. at 139).[5] Under controlling precedent, nearly any significant difference can be "meaningful," including differences in "the rank of the officers involved" and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* (quoting *Ziglar*, 582 U.S. at 139–40). For example, the D.C. Circuit has held that "the clearing of protestors from a public park by federal law enforcement" is meaningfully different from the "unlawful search and arrest by federal narcotics officers" that was at issue in *Bivens*. *Id.* More recently, it held that that a search and seizure of an individual who was filming a federal building's open garage door was meaningfully different from the search and seizure at issue in *Bivens* because the federal agents carrying out the search and seizure were "protecting a federal building from a perceived threat." *Jones v. United States Secret Serv.*, 143 F.4th 489, 494 (D.C. Cir. 2025). As these recent decisions illustrate, a context can be "new" under the

---

[5] The three cases in which the Supreme Court has recognized such a remedy are *Bivens*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). *See Egbert*, 596 U.S. at 490–91. Only *Bivens* itself involved circumstances that are analogous to those presented in this case.

8

modern *Bivens* framework even if it involves the same constitutional right (the Fourth Amendment right against unreasonable searches and seizures), the same procedural posture (law enforcement action taken without a warrant), and even one of the same underlying mechanisms of injury (excessive force) that was at issue in *Bivens* itself.  *See Buchanan*, 71 F.4th at 1008; *Jones*, 143 F.4th at 494.  If the circumstances of the case depart from prior *Bivens* cases in any way that suggests that "a court is not undoubtedly better positioned than Congress to create a damages action," the context is "new." *Egbert*, 596 U.S. at 492.

Applying these exacting standards, this Court is compelled to hold that the facts of this case present a "new context."  In this case, as in the recent case in which the D.C. Circuit considered the search and seizure of an individual filming a federal building from a public place, the alleged intrusion on the Plaintiffs' Fourth Amendment rights arose from "an unplanned encounter with unknown risks posed by an unidentified person."  *Jones*, 143 F.4th at 494.  Specifically, at the time of the conduct giving rise to the Plaintiff's claims, Officer Kellenberger was responding to a call for backup by a fellow officer who had reported that someone on scene had a knife.  That kind of encounter presents federal agents with a different baseline set of risks than they would face during a planned search of a suspect's home or a routine law enforcement investigation like a traffic stop.  *Cf. Bivens*, 403 U.S. at 389; *Hicks v. Ferreyra*, 64 F.4th 156, 166–69 (4th Cir. 2023).  Given those different risks, there may be "'systemwide' consequences of recognizing a cause of action under *Bivens*" that differ from the effects of prior *Bivens* decisions.  *See Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 136).  The possibility of such consequences compels the conclusion that this case arises in a "new context." *See id.*

Although the Plaintiffs argue persuasively that a jury could find that the circumstances at the time of Officer Kellenberger's arrival did not, in fact, present any imminent risk to the

9

officers on scene, that possibility does not alter the *Bivens* analysis.  The question for the Court is not whether the equities weigh in the Plaintiffs' favor under the exact circumstances of this case, but rather whether their claim arises in a "context" that is meaningfully different from that of prior *Bivens* cases.  If the "context" is different and there is reason to believe that "Congress might be better equipped to create a damages remedy," a *Bivens* action is not available.  *See Egbert*, 596 U.S. at 492.  That analysis requires considering the context at the level of generality at which any "systemwide" consequences will be felt, rather than focusing only on the facts of the individual case.  *See id.* at 493 (quoting *Ziglar*, 582 U.S. at 136).  Accordingly, any genuine dispute about the extent to which Lt. Lamond was in "fear for his safety," whether the crowd was becoming "increasingly agitated," and whether Mr. Singh actually impeded Officer Kellenberger's attempt to assist Lt. Lamond is not material to resolving whether a *Bivens* remedy is available.  *Cf.* Pls.' Objs. at 11–13 (quoting R. & R. at 2–4).  It is undisputed that at the time of the relevant events, Officer Kellenberger was responding to a call for backup by a fellow officer on duty in a public place who had reported that someone on the scene had a weapon.  The "unknown risks" of that "unplanned encounter" with "an unidentified person" make the context of this case meaningfully different from the context of *Bivens*.  *See Jones*, 143 F.4th at 494.

Having concluded that this case presents a "new context," the Court must next evaluate whether "special factors" weigh against recognizing a *Bivens* remedy.  *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 122).  Magistrate Judge Sharbaugh correctly identified one such factor: the existence of an "alternative remedial structure" that would allow the Plaintiffs to seek redress through an administrative grievance process rather than a civil suit for damages.  *See* R. & R. at 16–17 (quoting *Egbert*, 596 U.S. at 493).  There may be other such factors.  For example, allowing a *Bivens* remedy here "could intrude into Executive Branch functions in a dangerous

way" by causing federal gents "'to second-guess difficult but necessary decisions'" when coming to the aid of another officer in a public place. *See Jones*, 143 F.4th at 494 (quoting *Ziglar*, 582 U.S. at 142). Because a *Bivens* remedy is unavailable if there is "even one" rational reason to think that Congress may be better suited to decide whether a damages action may be available, the Court's analysis ends there. *See Egbert*, 596 U.S. at 496.

The modern test in *Bivens* actions is not whether it would be wise or equitable to allow a plaintiff to recover. The Supreme Court has instructed that "[t]he *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action." *Egbert*, 596 U.S. at 496. Instead, a district court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (emphasis in original) (quoting *Ziglar*, 582 U.S. at 136). If so, a *Bivens* action cannot proceed.

These rules compel the conclusion that Magistrate Judge Sharbaugh has recommended: Because the *Bivens* claims in this case arise in a "new context" and there is at least one "special factor" weighing against recognizing an implied remedy here, the Plaintiffs' remaining claims cannot succeed. *See Egbert*, 596 U.S. at 492–93. The Court shall therefore **GRANT** the Defendants' motion for summary judgment.

    **C.**    **The Court declines to hold in the alternative that qualified immunity bars the Plaintiffs' individual-capacity claims.**

Defendants Lamond and Kellenberger argue in the alternative that, even if a *Bivens* remedy were available in this context, the Defendants are entitled to qualified immunity on the facts of this case because their actions were objectively reasonable under the circumstances. Plaintiffs Kaur and Singh respond persuasively that the reasonableness of the Defendants'

11

actions depends on issues of fact that are genuinely disputed, meaning that the Defendants are not entitled to summary judgment based on qualified immunity.

This Court agrees with Magistrate Judge Sharbaugh that the present record does not clearly support a summary judgment ruling in Defendants' favor on this issue. *See* R. & R. at 18–19. Questions of excessive force and unlawful arrest are inherently fact-sensitive, and there appear to be genuine disputes of fact about the extent of the force that the officers used and the circumstances that immediately preceded Mr. Singh's arrest. *See, e.g.*, Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Dkt. No. 44-1, ¶¶ 23, 27; *see also* Pls.' Objs. at 13–14 (arguing that "a reasonable juror could conclude that *no* force was justified under these circumstances").

The Defendants argue that video evidence in the record discredits some of the testimony on which the Plaintiffs rely to support their position on these factual issues and that the Court can therefore conclude that no genuine dispute exists. Defs.' Reply at 16–17; *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that summary judgment was warranted because the plaintiff's account was "so utterly discredited by the record that no reasonable jury could have believed him"). However, given the Court's conclusion that a *Bivens* remedy is not available here, it is neither necessary nor appropriate for the Court to "sift through the record" in its entirety to determine whether the objective evidence affords this level of support for the Defendants' position on issues that, on the face of the record, appear to be reasonably in dispute. *See S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 615–16 (D.C. Cir. 2000).

Accordingly, because the Court's holding that a *Bivens* remedy is not available is sufficient to resolve this case, the Court declines to adopt the Defendants' alternative theory that they are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **DENY** the Defendants' motion to dismiss as to Defendant Lamond and **GRANT** the Defendants' motion for summary judgment.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 2, 2026

                                                             COLLEEN KOLLAR-KOTELLY
                                                             United States District Judge